1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                    No.  1:20-cr-00095-NONE-SKO

12            Plaintiff,

13       v.                                        ORDER DENYING MOTION TO SUPPRESS

14   JOSE ZAVALA–REYES,                            (Doc. No. 28)

15            Defendant.

16

17          On July 31, 2020, defendant Jose Zavala–Reyes filed a motion to suppress all evidence

18   seized as a result of his encounter with Firebaugh police officers on January 5, 2020.  (Doc. No.

19   28.)  The government opposed the motion on August 14, 2020.  (Doc. No. 29.)  A reply in

20   support of the motion was filed on August 21, 2020.  (Doc. No. 67.)  The court heard oral

21   argument on the motion on September 4, 2020.  Assistant U.S. Attorney Laura D. Withers

22   appeared at the hearing on behalf of the government and Assistant Federal Defender Matthew

23   Lemke appeared on behalf of defendant Zavala–Reyes.  For the reasons set forth below,

24   defendant's motion to suppress, as well as his request for an evidentiary hearing in connection

25   with that motion, will be denied.

26                              **Background**

27          On June 18, 2020, defendant Zavala–Reyes was indicted on the charge of being an illegal

28   alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2).  (Doc. No.

                                          1

1    22.)  There is also a criminal forfeiture allegation in the indictment brought pursuant to 18 U.S.C.

2    § 924(d)(1) and 28 U.S.C. § 2461(c).  (*Id.*)

3         The essential facts surrounding the encounter between two Firebaugh police officers and

4    defendant Zavala–Reyes appear relatively straightforward and undisputed.  At approximately

5    9:47 p.m. on January 5, 2020, Firebaugh Police Department (FPD) received a 911 call from a

6    female caller who reported that a suspicious yellow truck had been parked behind an apartment

7    building for three hours with two males inside.  Officers Miller and Monay were dispatched to

8    investigate and located a yellow truck parked at the reported location without its engine running.

9    The officers did not activate their vehicle's emergency lights, nor block the truck's path as they

10   arrived but did turn on their flashlights, given that it was dark, as they approached the parked

11   truck and saw two males inside.[1]  Defendant Zavala–Reyes was seated in the driver's seat of the

12   truck.  The officers told the two occupants why the officers were there and asked them for

13   identification.  The male in the front passenger seat offered an El Salvadoran ID card.  Defendant

14   Zavala–Reyes responded that he did not have any identification or driver's license but did state

15   his name and a date of birth, the latter of which was later determined by the officers to be false.

16   When asked by Officer Monay where he lived, defendant Zavala–Reyes responded that he did not

17   know.  Officer Monay believed the defendant to be under the influence due to the strong odor of

18   alcohol and marijuana and his bloodshot eyes.  He also observed that defendant was avoiding eye

19   contact, fidgeted, trembled, spoke softly and stuttered occasionally and that the passenger was

20   slurring his words, also had bloodshot eyes.  When asked by Officer Monay what they were

21   doing, defendant Zavala–Reyes responded he was just hanging out and drinking beer while also

22   acknowledging that he was aware it was unlawful to drink alcohol in public.

---

[1]  The government contends that as the officers made contact with the occupants of the truck, they saw them each with open containers of alcohol and also saw empty beer cans on the ground outside the truck.  The government points to the police reports as well as the officers' declarations that the contents of those reports are true and correct in support of this assertion.  (Doc. Nos. 29-1, 29-2, 29-3.)  Defense counsel contests the officers' reports of viewing the occupants with open containers of alcohol or seeing beer cans on the ground outside the truck (Doc. No. 30 at 3), but presents no declaration or other evidence contesting those facts.  Indeed, upon being invited by the court to proffer testimony that would be presented at an evidentiary hearing, if one were granted, no proffer of testimony with respect to these facts has been offered by the defense.

1    While Officer Monay was speaking with defendant Zavala–Reyes, Officer Miller

2    conducted a license check of the truck and learned that there was no record for the temporary

3    license plate or VIN.  When asked for the vehicle registration, defendant Zavala–Reyes presented

4    Officer Monay a large manila envelope full of paperwork which he claimed was the registration

5    and told the officer to check his computer if he did not believe the defendant was providing an

6    accurate name and date of birth.  The officers then asked for consent to search the truck,

7    defendant Zavala–Reyes consented to the search and was asked to exit the vehicle by the officers.

8    When the defendant opened the driver side door and began to exit the truck, he reached between

9    his legs and grabbed a handgun that was later determined to be loaded.  When the officers drew

10   their firearms in response, defendant Zavala–Reyes let go of the gun and was ordered out of the

11   vehicle at gunpoint and placed in a squad car.  (Doc. Nos. 29-1, 29-2, 29-3.)

12   Following his arrest, defendant Zavala–Reyes was booked on charges of assault with a

13   deadly weapon, false identification, possession of a firearm with a controlled substance, and

14   possession of a controlled substance.  The passenger of the truck was arrested for drinking in

15   public.  On March 4, 2020, defendant was charged by way of complaint in this court with being

16   an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5) (Doc. No. 1) and

17   on June 18, 2020, was indicted on that same charge.  (Doc. No. 22.)

18   In moving to suppress all evidence discovered by the officers on January 5, 2020,

19   defendant asserts that because the officers lacked reasonable and articulable suspicion of criminal

20   activity as required under the holding in *Terry v. Ohio*, 392 U.S. 1 (1968), their interaction with

21   him violated his Fourth Amendment rights.  (Doc. No. 28 at 4.)  In so arguing, the defendant

22   characterizes the officers' approach of the parked truck as an investigatory stop that could only be

23   justified based upon a reasonable suspicion of criminal activity, which the officers did not have

24   here.  (*Id*.)  Defendant refutes any contention that this was a consensual encounter based upon the

25   circumstances surrounding the officers' approach upon the parked truck.  (Doc. No. 30 at 2.)

26   Although defendant has submitted no declaration or other evidence, not proffered any testimony

27   or other evidence that would be presented, he nonetheless argues that because his counsel

28   /////

1   "disputes" the officers' reports and declarations, the "Court should set an evidentiary hearing in

2   order to resolve factual issues underlying the Fourth Amendment issue in this case." (*Id.* at 3.)

3       The government opposes the motion to suppress arguing that the officers' approach upon

4   the parked truck, with the defendant and his passenger seated inside, constituted a purely

5   consensual encounter under the undisputed circumstances of this case and that nothing occurred

6   thereafter to transform the encounter into a seizure until the defendant grabbed for a gun as he

7   was getting out of the truck. (Doc. No. 29 at 4–6.) At that point, of course, the government

8   contends that the officers obviously had an objective basis for suspecting criminal activity on the

9   part of the defendant. (*Id.* at 6.) Alternatively, the government argues that even if a reasonable

10  suspicion of criminal activity was required at the outset, there was a reasonable suspicion as soon

11  as the officers approached the truck to believe the defendant was engaged in criminal activity by

12  drinking in public. (*Id.* at 7.)

13      For the reasons explained below, the court concludes that the officers' approach of the

14  parked truck and its occupants was not an investigatory stop but rather a consensual encounter. In

15  addition, given the lack of even a proffer as to what testimony or evidence would be presented at

16  an evidentiary hearing, the court concludes that defendant is not entitled to such a hearing in

17  connection with his motion to suppress evidence. Defendant's motion to suppress evidence and

18  request for an evidentiary hearing will, therefore, both be denied.

19                                                 **Analysis**

20      The Fourth Amendment states, "[t]he right of the people to be secure in their persons,

21  houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

22  U.S. Const. amend. IV. Particularly relevant to resolution of the pending motion, the Ninth

23  Circuit has stated under circumstances similar to those presented by this case as follows:

24          A person is seized if "taking into account all of the circumstances
        surrounding the encounter, the police conduct would have

25          communicated to a reasonable person that he was not at liberty to
        ignore the police presence and go about his business." *Florida v.*

26          *Bostick*, 501 U.S. 429, 437 (1991) (internal quotation marks
        omitted); *see also United States v. Mendenhall*, 446 U.S. 544, 554

27          (1980) (holding that an encounter is a seizure if "a reasonable person
        would have believed that he was not free to leave"); *United States v.*

28          *Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004).

It is well established, however, that the Fourth Amendment is not implicated when law enforcement officers merely approach an individual in public and ask him if he is willing to answer questions. *See Muehler v. Mena*, 544 U.S. 93, 101 (2005); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Mendoza–Cepeda*, 250 F.3d 626, 628 (8th Cir. 2001). No Fourth Amendment seizure occurs when a law enforcement officer merely identifies himself and poses questions to a person if the person is willing to listen. *See Royer*, 460 U.S. at 497; *see also Orhorhaghe v. INS*, 38 F.3d 488, 494 (9th Cir. 1994). This is true whether an officer approaches a person who is on foot or a person who is in a car parked in a public place. *See United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994). Moreover, it is clear that the permissible questions may include a request for consent to search, *see Muehler*, 544 U.S. at 101, "as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 435.

We conclude that although Shaw conceded he suspected Washington of no criminal activity, Shaw's initial encounter with Washington was not a seizure and did not implicate the Fourth Amendment. In approaching the scene, Shaw parked his squad car a full car length behind Washington's car so he did not block it. Shaw did not activate his sirens or lights. Shaw approached Washington's car on foot, and did not brandish his flashlight as a weapon, but rather used it to illuminate the interior of Washington's car. Although Shaw was uniformed, with his baton and firearm visible, Shaw did not touch either weapon during his encounter with Washington. Shaw's initial questioning of Washington was brief and consensual, and the district court found that Shaw was cordial and courteous. Under these circumstances, the district court correctly concluded that a reasonable person would have felt free to terminate the encounter and leave. *See Kim*, 25 F.3d at 1430–31 (holding that an officer's initial encounter with Kim, who was seated in his lawfully parked car, was not a seizure or investigatory stop, where the officer parked his squad car partially blocking Kim's car, approached Kim's car on foot, and asked for, and received, permission to question Kim).

In sum, officer Shaw was entitled to question Washington for investigatory purposes, and the mere asking of questions, including asking for permission to search Washington's person, raised no Fourth Amendment issue so long as a reasonable person in Washington's situation would have felt free to leave.

*United States v. Washington*, 490 F.3d 765, 769–70 (9th Cir. 2007); *see also United States v. Douglass*, 467 F.3d 621, 623–24 (7th Cir. 2006) (finding that no seizure had occurred where officers parked in front of the defendant's car, approached the car from two sides, and shined their flashlights into the car); *United States v. Hendricks*, 319 F.3d 993, 999–1001 (7th Cir. 2003).

Here, defendant's attempts to distinguish the Ninth Circuit's holdings in *Washington* and *Kim* are unpersuasive. He argues that in *Washington* the encounter involved only one, not two,

5

1    officers and involved the asking of only three questions on a public street and that in *Kim* the

2    defendant specifically consented to police questioning.  (Doc. No. 30 at 2.)  He also argues that

3    his case is distinguishable because here two officers asked him a variety of questions, his freedom

4    of movement was inhibited and he was not told that terminating his conversation with police was

5    an option.  These contentions are unpersuasive for two reasons.

6           First, the conclusory arguments of defendant's counsel are either irrelevant to the

7    determination of whether an investigatory stop was effectuated when the officers first approached

8    the truck or are refuted by the essentially undisputed facts.  In this regard, whether there were one

9    or two officers who approached the car makes no difference to the determination of whether this

10   was an investigatory stop since it is undisputed that there were not a large number of officers

11   present.  According to the officers' written report of the encounter, they greeted the occupants,

12   telling them why the officers were there, and then asked them:  (1) what they were doing in the

13   parked truck; (2) for their identification; (3) where defendant Zavala–Reyes lived; (4) who the

14   truck belonged to (5) whether defendant Zavala–Reyes was on parole or probation or had been

15   arrested before; (6) whether defendant planned on driving away; (7) for vehicle registration; and

16   (8) for consent to search the truck which was given by the defendant.  (Doc. No. 29-1 at 8, 16–

17   17.)[2]  The questions asked by police here were not extensive and do not distinguish this case from

18   the questions posed by the officer in *Washington.*  Moreover, it cannot be disputed that

19   defendant's encounter with police was relatively brief.  Officer Miller located the truck in the

20   alley behind the apartment building at approximately 9:59 p.m. but did not approach the parked

21   truck until Officer Monay arrived.  (*Id.* at 16.)  Nonetheless, by 11:10 p.m. the other occupant was

22   already at the Firebaugh Police Department being Mirandized by officers.  (*Id.* at 17.)  During the

23   intervening hour, the entire encounter including the approach, the posing of questions, the request

24   for consent and the pointing of the firearm at officers, the arrest of the occupants, the search of

25   the truck at the scene and the transporting of the occupants to the police station for booking had

26

27   _____

     [2]  Through their conversation with defendant the officers were also told that the defendant's
28   cousin lived in the building where the truck was parked in the alleyway behind.  (Doc. No. 29-1 at
     17.)

                                            6

1    all taken place.  Clearly the encounter was brief and not extended.  The fact that this encounter

2    occurred in an alley behind an apartment building rather than on what is characterized by the

3    defense as a "public street" as in *Washington,* is of no consequence.  There is no reason to believe

4    that the alley was not a public thoroughfare and, in any event, it was defendant who chose the

5    location by parking the truck there for an extended period of time without any influence by the

6    police upon his decision to do so.  Finally, while defendant was not affirmatively told that

7    terminating his encounter with the police was an option, by the same token there is no basis upon

8    which to conclude that anything to the contrary was suggested by the officers.  Also, contrary to

9    the defense's suggestion, defendant's freedom of movement was not inhibited here.  The officers

10   simply approached the driver side door of the truck where he was seated and engaged him in

11   conversation, displaying nothing but flashlights to illuminate the interior given the late hour.

12   There is no suggestion that the officers touched a weapon, until defendant displayed his, or even

13   touched the door of the truck.  Indeed, the officers even asked defendant if he was planning on

14   driving the truck away.  (Doc. No. 29–1 at 17.)  None of defendant's suggested distinctions

15   between the facts in this case and those presented to the Ninth Circuit in *Washington* and *Kim* are

16   ones that make any difference to the legal analysis.  This was a consensual encounter.

17          Second, there is simply no evidentiary or factual basis for defendant's argument that this

18   was an investigatory stop carried out in violation of his rights under the Fourth Amendment.  The

19   court notes again that no declaration by either defendant Zavala–Reyes or his passenger have

20   been presented to the court raising any dispute as to the facts surrounding the encounter.  Indeed,

21   the defendant has not even made a proffer as to what evidence could be presented.  In the weeks

22   following the hearing on this motion, no declarations or proffer have been forthcoming from the

23   defense, even though the court focused on this deficiency at that hearing.  In short, the

24   defendant's contentions in seeking suppression of the evidence seized by officers are purely

25   conclusory and based on no more than the unsupported arguments of counsel.

26          For this same reason, defendant's request for an evidentiary hearing will also be denied.  It

27   appears that, despite offering no evidence or proffer of evidence, defendant nonetheless wishes to

28   test the officers' police reports and declarations by cross-examination.  This is an insufficient

basis upon which to request for an evidentiary hearing.  *See United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.") (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986), *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990), *United States v. Irwin*, 612 F.2d 1182, 1187 n.14 (9th Cir. 1980) and *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)); *United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991) (the broad declaration of defense counsel asserting that the defense motion's statement of facts was based upon discovery, rather than a declaration from an individual competent to testify, was not sufficient to require the granting of an evidentiary hearing); *United States v. Marcello*, 731 F.2d 1354, 1358 (9th Cir. 1984) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine."); *United States v. Woodson*, No. CR 11-00531 WHA, 2011 WL 5884913, at *6 (N.D. Cal. Nov. 23, 2011) (denying a defense request for an evidentiary hearing because "mere refusal to accept the uncontradicted evidence does not create a material issue of fact"); *United States v. Walker*, 239 F. Supp. 3d 738, 739 (S.D.N.Y. 2017) ("While [an evidentiary hearing] might have been warranted if there were important credibility issues that could not be addressed from the paper record, the defendant has made no showing that that is the case here."); *United States v. Martinez*, 992 F. Supp. 2d 322, 325–26 (S.D.N.Y. 2014) ("A defendant is not entitled to an evidentiary hearing in connection with a motion to suppress unless he can show that there are 'contested issues of fact going to the validity of the search'" and in the absence of an affidavit "by someone with personal knowledge that disputed facts exist" an evidentiary hearing is unnecessary) (citations omitted).

/////

/////

/////

/////

1

**Conclusion**

2          For all of the reasons set forth above, defendant Zavala–Reyes' request for an evidentiary

3  hearing and his motion to suppress evidence (Doc. No. 28) are hereby denied.

4  IT IS SO ORDERED.

5      Dated:   **October 5, 2020**                                    _____

6                                                                          UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28